# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **A.L.**

**No. 20-0454** (Gilmer County 19-JA-17)

## MEMORANDUM DECISION

Petitioner S.L., by counsel M. Tyler Mason, appeals the Circuit Court of Gilmer County's May 26, 2020, order terminating her parental rights to A.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Mary Elizabeth Snead, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2019, the DHHR filed a child abuse and neglect petition against petitioner and the father, alleging that they abused drugs and that the child was truant. The DHHR further alleged that law enforcement found drug paraphernalia and controlled substances in petitioner's possession during a traffic stop in late August of 2019, and that petitioner admitted to a truancy officer during a home check that she abused methamphetamine. At the preliminary hearing held the same month, petitioner waived her right to a contested hearing, and the circuit court ordered supervised visitations with the child upon petitioner's production of negative drug screens. Shortly thereafter, petitioner filed a motion for an improvement period. By November of 2019, fourteen-year-old A.L. was interviewed at the Child Advocacy Center ("CAC") and divulged that she witnessed petitioner and the father crush and ingest "suboxone pills and other white powder

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

substances." As a result of these new allegations, the DHHR filed an amended petition in November of 2019.

The circuit court held an adjudicatory hearing in November of 2019, wherein petitioner failed to appear but was represented by counsel. The DHHR presented the testimony of a law enforcement officer who confirmed through testing that the drug seized from petitioner in August of 2019 was methamphetamine. Next, the truancy officer testified as to A.L.'s unexcused absences from school and the resulting home visit, where petitioner admitted to abusing methamphetamine. Ultimately, the circuit court adjudicated her as an abusing parent due to her drug abuse.

In February and March of 2020, the circuit court held dispositional hearings. At the hearing in February of 2020, the DHHR first presented the testimony of a Child Protective Services ("CPS") worker who stated that petitioner had not exercised visitation with the child since the child's removal in August of 2019, had not adequately participated with services, and had not consistently drug screened. The worker further testified that she offered petitioner services to remedy her substance abuse, such as rehabilitation and substance abuse education, but she declined. The DHHR then recommended that petitioner's parental rights be terminated. Next, petitioner testified in support of her motion for an improvement period and claimed that she had complied with drug screening. However, immediately after the hearing, petitioner provided another drug screen and tested positive for methamphetamine. Due to the CPS worker's inability to confirm the dates of petitioner's alleged missed drug screens, the circuit court continued the dispositional hearing to March of 2020.

At the March hearing, the DHHR presented testimony from the Monongalia County Day Report Supervisor who testified that petitioner tested positive for methamphetamine and buprenorphine twice during December of 2019 through March of 2020. The supervisor also testified that petitioner refused to produce a sample on one occasion, which counted as a positive drug screen. The CPS worker testified that petitioner had agreed to enroll into inpatient rehabilitation and told the worker in February of 2020 that she was waiting on a bed at a facility but had to make certain personal arrangements before she would enroll in the program. The CPS worker also stated that petitioner was to report back to the worker about her progress as soon as possible, but petitioner never called the CPS worker back.

The DHHR then moved again for the termination of petitioner's parental rights based upon her continued drug abuse and failure to follow through with drug treatment. In response, petitioner admitted that she was addicted to methamphetamine and stated that she was willing to enroll in inpatient drug treatment. Petitioner presented communications from a drug rehabilitation program showing her efforts to obtain drug treatment and explained that she delayed getting into a program due to housing issues. During a recess at the hearing, petitioner submitted to a drug screen that showed that she was positive for methamphetamine. The circuit court then continued the dispositional hearing and ordered that petitioner enroll in an inpatient drug rehabilitation program by March 26, 2020.

However, on March 17, 2020, the circuit court entered an order generally continuing the matter due to the novel coronavirus pandemic ("pandemic"). Two months later, in May of 2020, the circuit court held the final dispositional hearing. The crucial issue before the circuit court was

what efforts petitioner made to complete inpatient drug rehabilitation since March of 2020. The DHHR presented the testimony of a CPS worker, who stated that petitioner never enrolled in a drug treatment program, despite the fact that there were fifteen long-term inpatient drug rehabilitation facilities available to her. The worker further testified that drug rehabilitation programs remained open and accepting new patients around the state, despite the pandemic, and that she had another client enroll in a drug rehabilitation program during this time period. Petitioner testified that she attempted to enroll in drug treatment programs by going to two local hospitals' emergency rooms. However, she explained that she was refused admission to any drug rehabilitation programs due to the ongoing pandemic. At the close of evidence, the circuit court expressed sympathy for petitioner but ultimately concluded that she had ample time to locate and obtain drug treatment. Specifically, the circuit court found that "there's a lack of motivation and desire on [petitioner's] part to address her addiction." Accordingly, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. Petitioner appeals the May 26, 2020, dispositional order terminating her parental rights to the child.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period. We find, however, that petitioner failed to satisfy the burden necessary for obtaining an improvement period, as she never demonstrated that she was likely to substantially comply with the terms thereof. *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004) ("[E]ntitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent is likely to fully participate in the improvement period.'"). Contrary to petitioner's assertion that she proved through her testimony at the dispositional hearings that she was likely to address the conditions of abuse and neglect in the near future, the record reveals that petitioner was, in fact, unlikely to do

---

[2]The father's parental rights were terminated below. The permanency plan for A.L. is adoption by a foster family.

so. Petitioner regularly missed drug screens; screened positive for several substances, including methamphetamine and buprenorphine throughout the proceedings; and forfeited supervised visitations with the child due to her inability to comply with drug screening.

Further, petitioner focuses her argument in support of an improvement period primarily on her unsubstantiated claim that she was turned away from drug rehabilitation programs due to the pandemic, which made it impossible for her to comply with the requirement that she obtain said treatment. However, petitioner admittedly delayed enrolling in drug treatment prior to the pandemic, and, most importantly, a CPS worker testified that drug treatment centers around the state remained open after the pandemic began. On appeal, petitioner complains that the DHHR failed to do more to help her find drug treatment but fails to recognize her own lack of diligence in obtaining drug treatment, both prior to the circuit court continuing disposition so that she could enroll in said treatment and after being granted more time to do so. Petitioner similarly ignores testimony from the final dispositional hearing that as many as fifteen treatment programs were available to her, undermining her unsupported claim that the DHHR could have done more to assist her in obtaining treatment. Based on this evidence, it is clear that the circuit court did not abuse its discretion in denying petitioner an improvement period. *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . .").

The record further supports the termination of petitioner's parental rights. Again, petitioner asserts that termination was inappropriate because it was based, in part, upon her failure to obtain long-term inpatient drug rehabilitation when she contends that restrictions due to the pandemic precluded her compliance in this regard. Having already addressed the fact that this argument is unavailing in the context of petitioner's request for an improvement period, we find that it similarly entitles her to no relief in regard to termination of her parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d)(1) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when the abusing parent has "habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through [with] the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning."

Here, the evidence demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. As shown above, petitioner failed to address her drug addiction by following through with recommended treatment. Further, according to the record, petitioner had not seen the child since removal in August of 2019 and never exercised supervision visitations. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589,

4

600 n.14 (1996) (citations omitted). Based on the foregoing, it is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of petitioner's parental rights was necessary for the child's welfare. Additionally, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Further, in regard to petitioner's argument that the circuit court should have granted her additional time and opportunity to remedy the circumstances of abuse and neglect, this Court has been clear that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted). As such, it is clear that the circuit court did not err in terminating petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and the May 26, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

5